## WILLIAM ASHBY & others *vs.* THE EASTERN RAIL ROAD COMPANY.

A deed conveying a wharf, which extends from the upland below high water mark, and bounding on an arm of the sea in which the tide ebbs and flows, passes the flats as parcel, and also as appurtenant to the wharf.

Where the proprietor of a wharf, which is bounded on an arm of the sea, claims the flats to the channel, viz. to low water mark, the burden of proof is on him to show that there was an original natural channel, from which the sea did not ebb at low water, and that such channel, or low water mark, was so far below his wharf as to include the flats which he claims.

Where the value of a wharf is impaired by the construction of a rail road across the flats below it, the owner is entitled to recover of the proprietors of the rail road the damages thus sustained by him.

A., the owner of a wharf, entered into a written agreement, not under seal, with B. and C., that certain machinery and fixtures should be erected on the wharf, at their common expense, and that the profits of the business to be carried on there should enure to their common benefit: A rail road was afterwards constructed across the flats below the wharf, and A. B. and C. joined in a petition for a jury to assess the damages thereby sustained by them, and alleged in their petition that they were the owners of the wharf, &c. *Held*, that if the jury believed, on all the evidence before them, that the petitioners had such an interest in the estate as entitled them to damages, and that they suffered damages jointly, then they properly joined in the petition, and were entitled to recover.

THIS was a proceeding upon a petition to the county commissioners for a jury to assess damages, alleged to have been sustained by the petitioners, by the laying out and construction of the eastern rail road over their land in Salem. The commissioners issued a warrant to the sheriff, requiring him to summon a jury to hear and determine the matter of the petitioners' complaint, and the sheriff performed the duty thus required of him. The jury gave a verdict for the petitioners, which was returned to the court of common pleas, and was set aside by that court, upon exceptions taken by the respondents to the instructions given to the jury by the sheriff, at the hearing. The petitioners thereupon alleged exceptions to the decision of that court.

The facts of the case, and the instructions given to the jury, are stated in the opinion given by the chief justice.

*Ward*, for the petitioners.

*N. J. Lord*, for the respondents.

SHAW, C. J. Two exceptions were taken to the rulings of the sheriff, on the trial before the jury. The petitioners claimed damage, amongst other things, for certain flats, that is, land flowed by tide water, belonging to them and taken and traversed by the rail road. The petitioners claimed the flats in question, as parcel of or appurtenant to their estate situated in Salem on the westerly side of a cove, river, or arm of the sea, flowed by the tide, on which they had a wharf extending easterly below high water mark. The rail road passed within about thirty or forty feet of the head of this wharf. The respondents contended, that the flats of the petitioners did not extend so far easterly as the line of the rail road, and that the rail road did not cover any part of the flats. This depended upon the construction of the deeds under which the petitioners claimed, and whether those deeds of the upland estate carried the right of flats, as parcel or appurtenant; and if so, what was the true line, by which that right of flats was bounded.

1. On the first point, the sheriff instructed the jury, "that by the construction of the petitioners' title deeds, they owned the flats to the channel, or low water mark."

We are of opinion that this direction was right. By a regular succession of deeds, conveying the title, and extending back to 1805, the estate is described as a wharf bounding on South River. It appears that this wharf extended from the upland, below high water mark, and that South River is an arm of the sea, in which the sea ebbs and flows. We are therefore of opinion, that the flats passed as parcel, by force of the colony ordinance, and also as appurtenant to the wharf. Anc. Chart. 148. *Doane* v. *Broad Street Association*, 6 Mass. 332. *Rust* v. *Boston Mill Corporation*, 6 Pick. 158.

2. Upon the other point, the sheriff instructed the jury, " that if they were left in doubt, upon all the evidence, where the natural channel was, if there were such a channel, then the petitioners were entitled to go to the centre of the ancient river."

The court are of opinion, that this direction was incorrect, and that the exception was well taken. If this tract of flats, called South River, had no channel running through it, that is,

no depression, from which the tide did not ebb at low water, then it must have been a cove, and all the riparian proprietors on the cove would divide the flats amongst them, by lines drawn from their respective lands to the channel, running by the mouth of the cove, from which the tide flows into the cove, giving each a line on the channel, proportioned to his line on the cove. *Rust* v. *Boston Mill Corporation*, 6 Pick. 158. If there was an original natural channel, through the cove or river, formed by a stream of fresh water falling into it above, or otherwise, then it was a river or arm of the sea, through which the tide ebbed and flowed, and each riparian proprietor was entitled to the flats, to such channel or stream, if not exceeding one hundred rods.

In reference to the case of the fact being left in doubt by the evidence, the jury should have been instructed, that the burden of proof was upon the petitioners, to prove their title to the soil of the flats claimed, and for that purpose to prove that the original channel or line of low water mark extended so far, as to include the soil, or some part thereof, over which the rail road was laid ; and that if they failed to establish their title by such proof, their claim for damages on that ground could not be sustained.

The court are therefore of opinion, that the decision of the court of common pleas, declining to accept this verdict and render judgment upon it, was correct, and that this result be certified to the county commissioners, to the end that a warrant may duly issue for a new trial.

––––––––––

Another jury, summoned and empannelled by the sheriff, under a new warrant from the county commissioners, gave a verdict for the petitioners. The respondents filed exceptions to the instructions, given by the sheriff to this jury, but they were overruled by the court of common pleas, and the verdict was accepted by that court. The respondents brought the case again before this court, on exceptions to the decision in the court below. These exceptions, (which fully appear in the

opinion of the court,) were argued and overruled at the November term, 1843.

*N. J. Lord*, for the respondents.

*Ward*, for the petitioners.

SHAW, C. J.   It appears by the bill of exceptions allowed by the sheriff, that at the trial before him, the evidence of legal title to the land, over which the rail road passes, was a deed showing the fee to be in William Ashby, one of the petitioners, alone.   But it further appeared, that an agreement in writing not under seal, had been entered into, between said William Ashby and two other petitioners, by which it was stipulated, that certain machinery and fixtures were to be erected on the premises, at their common expense, and that the profits of the business, to be carried on there, were to enure to their common benefit.

The respondents requested the sheriff to instruct the jury, that as the title to the estate appeared by the deeds to be in William Ashby alone, the three petitioners were not entitled, as owners, to recover in this process, and that the jury must find for the respondents.   This instruction the sheriff declined giving ; and he instructed the jury, "that if they believed, upon all the evidence, that the petitioners really owned the estate, and suffered the damage, if any, jointly, they were properly joined in this petition, and entitled to recover."

This direction, taken in connexion with the subject matter and the state of the question, was, we think, correct.   The sheriff was not called on to give an opinion upon an abstract question of legal title, upon deeds.   The question was, whether the petitioners had such interests in the estate, as would entitle them to recover for damage, done by the rail road, which impaired its value.

In *Dodge* v. *County Commissioners of Essex*, 3 Met. 380, it was held that parties interested in land, not taken for a rail road. but so near as necessarily to be damnified by it, are entitled to damages.

It is settled by a series of decisions, and now by statute, that to recover damage done to real estate by a highway or rail road.

it is not necessary that the claimant should be tenant of the freehold, or legal owner of the estate. It is sufficient, that he has an interest, which will be impaired by the public work, so that he must sustain a loss by it. Rev. Sts. c. 24, §§ 31, 32. It is in this sense that the sheriff is to be understood in his instruction to the jury, to determine whether the petitioners were owners of the estate, and had suffered the damage, if any, jointly ; and so understood, it was correct. Notwithstanding, therefore, it appeared by the deed, that William Ashby was owner in fee of the estate, still if by force of the agreement entered into by him with the other petitioners, regarding it as a declaration of trust, or a demise, they became interested in the use and occupation of the estate, and in the machinery and fixtures set up and put in operation therein, then they were owners so far as to establish a claim for damages, if any had been sustained ; and this was a proper question for the determination of the jury, upon the evidence.

If the petitioners were interested in one and the same estate, whether such interests were joint or several, it is within the spirit, if not within the express provision of the statute, that they should join in one petition for the assessment of damages. Rev. Sts. c. 24, § 48. This is manifestly for the benefit of the respondents, and is so regarded by the statute, which provides, that when the damages are several, the jury, after determining the whole damage, may apportion it amongst the respective parties, who have sustained damage ; or if any one has joined in such petition, whom they find to have sustained no damage, the jury may so report, and yet assess damages for the others. Rev. Sts. c. 24, § 50.

*Judgment of the court of common pleas, accepting the verdict, affirmed*